UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JASON LEE SCHWARTZ,

        Plaintiff,

        v.

WARDEN,

        Defendant.

CAUSE NO. 3:26-CV-604-GSL-JEM

OPINION AND ORDER

Jason Lee Schwartz, a prisoner without a lawyer, initiated this case by filing a motion for preliminary injunction. ECF 1. In the interests of justice, the court will also construe this filing as a complaint sufficient to initiate a federal civil lawsuit. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Schwartz arrived at the Indiana State Prison (ISP) in January of 2025 and was immediately placed into the segregation unit for "something that I did at another

facility."[1] ECF 1 at 2. He claims he has been having "problems with all of the officers

and inmates" since that time. *Id*. Specifically, he states:

> All of the officers here at ISP are threatening to kill me and or have me
> killed by the other inmates. Every day, the officers walk around screaming
> my full name and DOC no. to all of the inmates. Telling them to look up
> my charges on their tablets, telling them that I am a snitch, due to the
> grievances I've filed against them all. The officers are telling all of the
> inmates that they will pay to have me killed here at ISP. Every single day,
> all of the inmates are threatening to kill me, and telling me that I should
> just kill myself.[2]

*Id*. at 2–3. To that end, Schwartz alleges he is "chronically mentally ill" and that the

threats are making his mental health worse. *Id*. at 1. He claims there have been no

"licensed mental health staff" at ISP for the past four months, so he hasn't received any

treatment despite repeated requests for help. *Id*. at 4.[3] Although he admits he is "taking

medications twice daily" for his bipolar and seizure disorders, he claims he is still

suicidal *Id*. at 1. Schwartz states, "I set my cell on fire, in an attempt to kill myself" on

March 28, 2026. *Id*. at 3. He was taken to medical and placed in a special management

cell for a week, but he was returned to the same "bubble cell" in segregation after that.

*Id*. at 4. On April 5, 2026, he attempted suicide via the same method again. This time he

---

[1] He says he was charged with "attempted murder of an officer due to my mental health problems" in 2021 and has been held in various segregation units within the Indiana Department of Correction since then. ECF 1 at 2.

[2] Of note, both the handwriting and the allegations in this paragraph are strikingly similar to preliminary injunctions recently filed by other inmates at the Indiana State Prison in separate cases. *See Henderson v. Arvin, et al.*, cause no. 3:26-CV-468-CCB-SJF (N.D. Ind. Apr. 8, 2026) at ECF 3; *see also Cordle v. Fleming*, cause no. 3:25-CV-335-APR (N.D. Ind. Apr. 18, 2025) at ECF 49.

[3] He says there are non-licensed "mental help staff" at the facility, but they are only there to document things. ECF 1 at 6.

was placed on suicide watch for about a week, but he was taken to the same bubble cell afterwards where he remains today.

Schwartz describes his specific bubble cell as having "thick plexy (sic) glass covering the top of the cell and steel plates covering the bottom half of the cell." *Id*. at 5. He says it is "located at the very back of the ranges . . . in the segregation unit, D-unit, farthest away from any help from staff." *Id*. In a healthcare request attached to the complaint, he states, "I'm in a bubble cell under the stairwell where I'm getting no lighting in my cell day or night. I'm in complete darkness. . .. I have severe mental issues. I can't sleep or even see to eat." ECF 1-1 at 2. According to Schwartz, the conditions of the bubble cell are compounded by the fact that the Warden "cut all the power off" to the segregation unit on April 8, 2026, due to inmates setting repeated fires which caused several to be "severely burnt alive." ECF 1 at 6. Because there is no power, Schwartz claims, "I have access to no air and I'm sitting in the pitch dark day and night." *Id*.

As for relief, Schwartz states, "I'm not asking for any damages, or money, just that I be transferred to any other facility where I can get the proper treatment from my mental health problems, and be safe." *Id*. at 9.

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish a violation of the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).[4]

The Eighth Amendment also prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to

---

[4] With regard to non-medical prison officials, they generally don't violate the Constitution if they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)).

adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Depending on the circumstances, light deprivation may trigger Eighth Amendment concerns, although the contours of such a claim are still largely undefined in the Seventh Circuit. *See, e.g., Blanchard v. Hyatte*, No. 3:21-CV-160-CCB-SJF, 2024 WL 4038080, at *2–3 (N.D. Ind. Sept. 4, 2024) (collecting cases). "Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id*. In sum, the Constitution is violated if a prison official exhibits deliberate indifference to any hazardous condition(s) that may seriously harm an inmate. *Thomas*, 2 F.4th at 719.

Here, Schwartz claims he has been diagnosed with a serious mental illness that is currently going untreated. He alleges that, while his condition is being documented, he is not receiving any further care. Due to this alleged lack of care, Schwartz asserts he is having suicidal ideations and has recently attempted suicide twice by setting fire to his cell. According to Schwartz, his mental health issues are exacerbated by the fact that he is being held in a bubble cell under the stairwell where he has been subjected to "complete darkness" around the clock since April 8, 2026. These allegations are sufficient to state Eighth Amendment medical and conditions claims against the

Warden for permanent injunctive relief to ensure Schwartz is receiving constitutionally adequate medical care and is being held in conditions that comport with the requirements of the Constitution. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (The warden of a correctional facility has both the authority and the responsibility to ensure inmates are housed in conditions that comport with the Eighth Amendment.); *see also Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)).[5]

In addition, Schwartz alleges he is in danger of being killed or harmed. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. For a defendant to be liable, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk'

---

[5] As noted above, Schwartz is not seeking money damages, and he has not plausibly stated a claim against any defendant for individual liability.

6

[associated with mental health issues] does not necessarily correlate to a 'substantial risk'")."[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

Schwartz alleges that "all of the officers and inmates" are threatening to either kill him or have him killed every single day. These allegations are far too vague to state a plausible failure to protect claim because the complaint doesn't identify an ongoing "specific, credible, and imminent risk of serious harm." *Gevas*, 798 F.3d at 481 (7th Cir. 2015); *see also Klebanowski*, 540 F.3d at 639–40 (general requests for help, expressions of fear, and even prior attacks aren't sufficient). Accordingly, these claims will be dismissed.

As a final matter, the court must address Schwartz's request for preliminary injunctive relief. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020)

(quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[6] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

---

[6] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

8

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, my ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

As described in detail above, Schwartz claims he is not receiving any treatment whatsoever for his serious mental illness, which is being exuberated by the fact that he is currently being held in a cell in total darkness for twenty-four hours a day. He also alleges the constant darkness is making it difficult for him to eat or sleep. The Warden will be required to file a response addressing these allegations before the court rules on the motion.

For these reasons, the court:

(1) DIRECTS the clerk to separately docket the motion for preliminary injunction (ECF 1) as a complaint;

(2) DIRECTS the clerk to add the Warden of the Indiana State Prison in his official capacity as a party to this action;

(3) GRANTS Jason Lee Schwartz leave to proceed against the Warden of the

Indiana State Prison in his official capacity on a claim for permanent injunctive relief in the form of ensuring he is provided with constitutionally adequate medical treatment for his serious mental illness;

(4) GRANTS Jason Lee Schwartz leave to proceed against the Warden of the Indiana State Prison in his official capacity on a claim for permanent injunctive relief in the form of ensuring he held in conditions of confinement that comport with the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES the Warden of the Indiana State Prison in his individual capacity;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of the Indiana State Prison at the Indiana Department of Correction, with a copy of this order and the motion for preliminary injunction (ECF 1), which has also been construed as a complaint;

(8) DIRECTS the clerk to email a copy of the same documents to the Warden of the Indiana State Prison at the Indiana Department of Correction;

(9) ORDERS the Warden of the Indiana State Prison to acknowledge receipt of the email;

(10) DIRECTS the clerk to docket receipt of the acknowledgement;

(11) **ORDERS the Warden of the Indiana State Prison to file and serve a response to the request for preliminary injunction (ECF 1), as soon as possible, but not later than <u>May 22, 2026</u>,** (with supporting documentation and declarations from

other staff as necessary) describing the conditions Jason Lee Schwartz is currently being confined in and explaining how he is receiving constitutionally adequate medical treatment for his serious mental illness; and

(12) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Warden of the Indiana State Prison to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 8, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT